Filed 3/12/13  Angelakis v. Hennigan CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| GUS ANGELAKIS,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>J. MICHAEL HENNIGAN et al.,<br><br>    Defendants and Appellants. | F064956<br><br>(Super. Ct. No. CV002289)<br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Merced County.  Donald J. Proietti, Judge.

Parish & Small, William H. Parish and Kyle A. Hampton for Defendants and Appellants.

Downey Brand, Anthony L. Vignolo, Jenny Dione Dennis; and Lawrence J. Koncz for Plaintiff and Respondent.

-ooOoo-

Appellants, J. Michael Hennigan and Jack A. Smith, challenge the trial court's denial of their motion to compel mediation and arbitration of their disputes with

respondent, Gus Angelakis, pursuant to the operating agreement executed by Hennigan and Angelakis. The trial court concluded that arbitration could not be compelled because the agreement provides that arbitration will commence only "'if all parties agree to arbitration.'" The court further held that it did not have jurisdiction to compel the parties to mediate.

Appellants argue that, in light of the policy favoring arbitration, the agreement should be interpreted to grant each party the unilateral right to compel arbitration. According to appellants, the clause requiring the parties to agree to arbitration refers to the inclusion of additional parties and the possibility of a speedier commencement of arbitration.

Although arbitration of disputes is favored, parties will not be compelled to arbitrate disputes that they have not agreed to arbitrate. Here, giving the contract language its usual and ordinary meaning, we conclude that both parties must agree to arbitrate. Further, since mediation is voluntary and nonbinding, there is no justification for compelling the parties to mediate. Accordingly, the order will be affirmed.

## BACKGROUND

Angelakis started farming in the 1950's and acquired significant real property. Hennigan began serving as Angelakis's personal legal counsel in 1974 and, over the years, the two became friends.

In 2005, Hennigan and Angelakis formed Quail H Farms, LLC (Quail H), a farming entity, and executed an operating agreement. At that time, Hennigan and Angelakis were the only members of Quail H. This operating agreement contains the following mediation and arbitration clause:

> "In any dispute over the provisions of this Operating Agreement and in other disputes among the members, if the members cannot resolve the dispute to their mutual satisfaction, the matter shall be submitted to mediation. The terms and procedure for mediation shall be arranged by the parties to the dispute.

2.

"If good-faith mediation of a dispute proves impossible or if an agreed-upon mediation outcome cannot be obtained by the members who are parties to the dispute, the dispute may be submitted to arbitration in accordance with the rules of the American Arbitration Association. Any party may commence arbitration of the dispute by sending a written request for arbitration to all other parties to the dispute. The request shall state the nature of the dispute to be resolved by arbitration, and, *if all parties to the dispute agree to arbitration,* arbitration shall be commenced as soon as practical after such parties receive a copy of the written request.

"All parties shall initially share the cost of arbitration, but the prevailing party or parties may be awarded attorney fees, costs and other expenses of arbitration. All arbitration decisions shall be final, binding and conclusive on all parties to arbitration, and legal judgment may be entered based upon such decision in accordance with applicable law in any court having jurisdiction to do so." (Italics added.)

As of January 1, 2009, Angelakis's membership interest in Quail H was converted to a "preferred" membership interest, thereby divesting Angelakis of management and voting rights. At about that time, Smith purchased a member interest in Quail H.

In February 2011, Hennigan and Smith received a letter from Angelakis's counsel outlining several disputes between Angelakis and Hennigan and Smith. According to Angelakis, his capital account in Quail H was wrongly reduced from approximately $12.5 million to $3.5 million. Angelakis demanded mediation of the disputes. Counsel for Hennigan and Smith responded that "in the hope … we can clarify to your satisfaction the accusations in your letter are entirely baseless" and if unable to "accomplish that in short order" Hennigan and Smith "will be prepared to proceed quickly to mediation."

In November 2011, Angelakis filed the underlying complaint alleging causes of action for fraud, negligent misrepresentation, breach of fiduciary duty, and financial elder abuse against Hennigan and Smith. In response, Hennigan and Smith moved for an order compelling mediation and arbitration of their disputes with Angelakis pursuant to the Quail H operating agreement.

The trial court denied the motion. The court found that arbitration could not be compelled under the plain language of the arbitration provision. Rather, the court

3.

concluded that all parties must agree to arbitration. The court declined to rule on appellants' request to stay the action and compel mediation on the ground that it had neither been presented with, nor was aware of, any authority providing the court with "jurisdiction or authority to compel mediation."

## DISCUSSION

### 1. *The trial court correctly refused to compel arbitration.*

When a party seeking to compel arbitration proves the existence of a valid arbitration agreement covering a dispute, the trial court is required to order the dispute to arbitration. (*Laswell v. AG Seal Beach, LLC* (2010) 189 Cal.App.4th 1399, 1404.) Being as arbitration is a matter of contract, the court's role is limited to determining whether the party resisting arbitration agreed to arbitrate. (*Gravillis v. Coldwell Banker Residential Brokerage Co.* (2006) 143 Cal.App.4th 761, 771.) A person cannot be compelled to accept arbitration without such an agreement. (*Bono v. David* (2007) 147 Cal.App.4th 1055, 1063.) Nevertheless, arbitration of disputes is favored and thus, when there is doubt as to the meaning and construction of an arbitration agreement, that doubt should be resolved in favor of arbitration. (*Id.* at p. 1062.)

In construing an arbitration agreement, we apply general principles of contract law. Where, as here, the language of the arbitration provision is not in dispute, we review the trial court's decision de novo. (*Mission Viejo Emergency Medical Associates v. Beta Healthcare Group* (2011) 197 Cal.App.4th 1146, 1153.)

The goal in construing contracts is to give effect to the parties' mutual intent. (*Boghos v. Certain Underwriters at Lloyd's of London* (2005) 36 Cal.4th 495, 501 (*Boghos*).) We determine this intent from the words alone, if possible, by focusing on the usual and ordinary meaning of the language used. (*Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 955.) "'If contractual language is clear and explicit, it governs.'" (*Boghos, supra,* 36 Cal.4th at p. 501.) Further, we must view the language as a whole and, if possible, give

4.

effect to every part to avoid rendering any part of the agreement surplusage. (*Segal v. Silberstein* (2007) 156 Cal.App.4th 627, 633.)

Here, the first part of the arbitration provision provides that, if mediation is unsuccessful, "the dispute may be submitted to arbitration." Further, "[a]ny party may commence arbitration of the dispute by sending a written request for arbitration to all other parties to the dispute."

Appellants contend that this quoted language grants each party the unilateral right to compel arbitration. There is some support for appellants' construction of these particular sentences. In *Service Employees Internat. Union, Local 18 v. American Building Maintenance Co.* (1972) 29 Cal.App.3d 356 (*Service Employees*), the court held that a provision stating "'*the issue in dispute may be submitted to an impartial arbitrator*'" (*id.* at p. 358) must be construed as providing for mandatory rather than consensual arbitration. The court noted that, since the parties could always elect consensual arbitration without such a contract provision, interpreting the clause to require only consensual arbitration would render the provision of little purpose. (*Id*. at pp. 358-359.)

Similarly, in *Pacific Gas & Electric Co. v. Superior Court* (1993) 15 Cal.App.4th 576 (*Pacific Gas & Electric*), the court concluded that the agreement "specifying that any dispute 'may be submitted *by either party* to arbitration'" mandated arbitration. (*Id*. at p. 595.) The court determined that, in "this context the 'may' signifies the right of the party to invoke arbitration." (*Ibid*.)

However, unlike the provisions in *Service Employees* and *Pacific Gas & Electric*, here the arbitration clause continues with "The request shall state the nature of the dispute to be resolved by arbitration, and, *if all parties to the dispute agree to arbitration,* arbitration shall be commenced as soon as practical after such parties receive a copy of the written request." (Italics added.) Reading the entire paragraph as a whole and giving effect to every part, there is only one logical interpretation. Either party may begin the

5.

arbitration process by sending a written request for arbitration to all other parties but arbitration will not actually occur unless all parties agree to arbitration. If we interpret the provision as urged by appellants, the phrase "if all parties to the dispute agree to arbitration" is unnecessary, i.e., surplusage. Appellants' contention that "if all parties to the dispute agree to arbitration" only refers to commencing arbitration "as soon as practical" is unpersuasive. The requirement that arbitration be commenced "as soon as practical" adds little, if any, substance to the agreement.

The arbitration provision in this case more closely resembles the one interpreted by the court in *Titan Group, Inc. v. Sonoma Valley County Sanitation Dist.* (1985) 164 Cal.App.3d 1122. In *Titan Group*, the arbitration clause provided that "'all … disputes … arising out of or relating to this agreement or the breach thereof will be decided by arbitration *if the parties hereto mutually agree*, or in a court of competent jurisdiction .…'" (*Id*. at p. 1125.) The court acknowledged that contractual arbitration is a favored method of resolving disputes and that every intendment must be indulged to give effect to such proceedings. (*Id*. at p. 1127.) However, the court also noted the importance of the jury trial in our system of jurisprudence and concluded that any waiver thereof should appear in clear and unmistakable form. Since the agreement did not present such a waiver, the court refused to compel arbitration. (*Id*. at p. 1129.) In response to the argument that the arbitration clause would serve no purpose if both parties had to agree because parties can always agree to arbitrate a dispute, the court responded that such an arbitration clause does serve a contractual function. (*Id*. at pp. 1128-1129.) "It provides the *procedure* for arbitration in the event the parties agree to arbitrate." (*Id*. at p. 1129.) Similarly here, the arbitration provision provides the procedure if all parties agree to arbitrate.

In sum, reading the arbitration provision as a whole and giving effect to all parts, we conclude that all of the parties must agree to arbitration. Accordingly, the trial court correctly denied appellants' motion to compel arbitration.

**2.** *The trial court properly refused to compel mediation.*

The operating agreement provides that, if any dispute among the members cannot be resolved to their mutual satisfaction, the matter shall be submitted to mediation with the terms and procedure for mediation being arranged by the parties to the dispute. Angelakis requested mediation in February 2011. Hennigan and Smith responded that, if the dispute could not be resolved, they would be prepared to proceed quickly to mediation. Approximately eight months later, Angelakis filed his complaint without mediation having taken place.

Appellants requested the court to compel mediation but the court refused to do so. Appellants contend that, because the operating agreement mandated mediation, the court erred.

Mediation is a process whereby a neutral person facilitates communication between the parties involved in a dispute to assist them in reaching a mutually acceptable agreement. (*Jeld-Wen, Inc. v. Superior Court* (2007) 146 Cal.App.4th 536, 540 (*Jeld-Wen*).) This neutral third party has no decision making power but, rather, intervenes in the dispute to help the litigants voluntarily reach their own agreement. "Essential to the mediation process is the concept that the parties are in control of resolving their own dispute." (*Ibid.*)

There is a strong public policy in favor of promoting mediation as an alternative to judicial proceedings in a less expensive and more expeditious forum. (*Cullen v. Corwin* (2012) 206 Cal.App.4th 1074, 1079.) The court will encourage mediation in that if the parties have contractually agreed to a sanction to be imposed for failing to attempt to mediate, the court will uphold that sanction. For example, if the contract bars recovery of attorney fees by a prevailing party who commences an action without first attempting to resolve the matter through mediation or who refuses to mediate after a request has been made, that provision will be enforced and attorney fees that would otherwise have been

7.

available will not be awarded.  (*Id*. at pp. 1078-1079; *Lange v. Schilling* (2008) 163 Cal.App.4th 1412, 1416-1417.)

Nevertheless, mediation is voluntary.  (*Jen-Weld, supra,* 146 Cal.App.4th at p. 541.)  Thus, the court cannot force parties to mediate.  An order compelling mediation is antithetical to the entire concept of mediation.  (*Id*. at p. 543.)  Accordingly, the trial court properly refused to compel respondent to mediate.

## DISPOSITION

The order is affirmed.  Costs on appeal are awarded to respondent.

_____

LEVY, Acting P.J.

WE CONCUR:


_____

CORNELL, J.


_____

GOMES, J.

8.